(Decided January 25th, 1866.)

ANTONIA M. L. WATERS, EXCTX. OF ANDREW G. WATERS, *vs.* JAMES S. WATERS, TRUSTEE, AND OTHERS.

WILLS, CONSTRUCTION OF: LEGACIES AND BEQUESTS, CONTINGENT AND VESTED.—
   A testator provided by means of a trust for the annual support of his widow during her life, and also during the life of his said widow for the support

of his daughter M., and the support, maintenance and education of his minor children, out of the rents, dividends, income and profits of his estate, real and personal, which he devised to two of his sons and their heirs, &c., upon the trusts and for the uses and purposes limited in the will; and the surplus of said rents, &c., he devised "in trust that the whole of said surplus be divided annually amongst all my children who may be of the age of twenty-one years, or who may be married," &c. The will was made in 1857; the testator died in 1858, leaving a widow and eight children, of whom two were under the age of twenty-one years when the will was executed; one of these became of age before the death of the testator, the other some time after. Four were married when the will was executed. In 1859 one of the sons died, leaving a widow and children; another, one of the trustees, A. G. W., died in 1863, leaving also a widow and children. The said widow of the deceased trustee, having been appointed his executrix, and having qualified as such, filed a bill for an injunction to prevent such a distribution of the surplus rents, &c., in the hands of the surviving trustee as would exclude the estate of her husband from a participation therein, Held :

That the children of the testator who were of the age of twenty-one years, or married, at the time of his death, took vested interests in their shares of the surplus income from his estates from that time; and that the shares of those who attained twenty-one years, or married after his death, became vested at the happening of either of those events, and that the share of A. G. W. survived to his personal representatives.

Appeal from the Circuit Court of Baltimore City.

This is an appeal from a *pro forma* order of the Circuit Court of Baltimore City refusing an injunction. The only question in the case is as to the construction of a devise in the will of Freeborn G. Waters. The allegations of the bill and the portion of the will in controversy are set forth in the opinion of this Court.

The cause was argued before Bowie, C. J., and Bartol, Goldsborough, Cochran and Weisel, J.

*A. W. Machen* and *R. J. Gittings* for the appellant.

1. The law favors the vesting of estates, for so to hold generally better accomplishes the purpose of the testator

Waters' Exctx. *vs.* Waters Trustee et al.

in the case of the death, before the time of actual enjoyment, of any object of his bounty for whose death, under such circumstances, he has not made express provision. 1 *Jarm. on Wills*, 726 *a. Barker vs. Barker*, 13 *Eng. L. & E. Rep.*, 173. *Ridgway vs. Ridgway*, 4 *Eng. L. & E. Rep.*, 108. If such were not the rule of construction, the hardship, as a learned Judge has said, would often be enormous. *King vs. Isaacson*, 17 *Eng. L. & E., Rep.*, 455, 457. At any rate, no rule is more firmly established, and contingency will not be imported into such gifts without a manifest necessity. No such necessity exists here. On the contrary, the just and equitable construction for which we contend is the obvious and rational interpretation, and the only one which is in perfect harmony with the other provisions of the will.

The gift in question is in the nature of an annuity. Subject to certain charges or deductions of a definite character, though variable in amount, the entire rents and profits for the term of the life of Mrs. Matilda Waters are given to the children who are twenty-one or married. The circumstance that, so long as some of the children are minors or unmarried, others may from time to time be let in, is immaterial, and cannot at all effect the quality of the gift as vested or otherwise. The gift is defeasible to the extent of the diminution of the dividend to be occasioned by the deduction of the share of the new member, and that is all. *See Blease vs. Burgh*, 2 *Beav.*, 227, *and see Ellis vs. Maxwell*, 12 *Beav.*, 104. *Oppenheimer vs. Henry*, 10 *Hare*, 441. Equally immaterial is it that the whole rents and profits are not given, but the rents and profits, less the payments requisite for certain other objects. A residuary devise, although the amount of it be uncertain until the prior payments are made, is never for this reason considered as contingent. It may turn

out, and often does, that nothing is left for the gift to operate on, and yet it will remain all the while a vested interest. *Bolger vs. Mackell*, 5 *Ves.*, 509, 513. 1 *Jarm. on Wills*, 768. Just as certain as that the $800 a year and $500 a year are annuities, is it that the gift of the surplus of annual income resulting after the deduction of these or other charges, as the case may be, is an annuity. Stripped therefore of circumstances which are immaterial with respect to the question in hand, the case is that of an annuity, or what is exactly equivalent to an annuity, to each of the testator's children who shall be twenty-one years of age or married—an annuity, the term of which is the duration of the life of the widow.

Now, it is clear that where there is an annuity to A during the life of B, or a bequest of the interest of a bond or of a sum of money to A during the life of B, A has an interest which is not at all dependent on his own life, but is transmissible to his executor in the event of his dying before B. This was held by Lord HARDWICKE in *Savery vs. Dyer, Amb.*, 139, and had been previously decided in *Gifford vs. Goldsey*, 2 *Vern.*, 35, upon the authority of 1 *Rolle Ab.*, 831, *pl.* 5. *See also Eales vs. Cardigan*, 9 *Sim.*, 384. *Webb vs. Kelly, Id.*, 469. *Jones vs. Randall*, 1 *Jac. & Walk.*, 99. 1 Code, Art. 93, sec., 220.

II. a. It will be contended on the other hand, however, that this bequest should be construed, not as one entire gift, but as a succession of distincts gifts—each act of division marking a separate limitation dependent upon the particular state of things existing at the time of making it. But, in the first place, the gift is one, and not several. Just as the annuities of $800 and $500 are in the same clause treated in the aggregate, and directed to be deducted, so the whole income to accrue throughout the life of Mrs. Matilda Waters, out of which they are

to be taken, is dealt with in its entirety. The annual division proceeds merely from the nature of the subject matter, in like manner as the two annuities would be discharged in annual payments. The provision for distributing the income annually, is not at the most so strong a circumstance, as a direction that the whole should accumulate and be payable at the death of the widow would be. And it is certain that such a modification of the existing clause would not prevent the gift from vesting in each child, from the time he should be found to be of the age of twenty-one, nor would it raise any question of a right of survivorship, without the addition of express words, such as "then living." *Blease vs. Burgh.*, 2 *Beav.*, 226. 1 *Jarm. on Wills*, 767. *Stretch vs. Watkins*, 1 *Madd.*, 253, (143.)

b. And secondly, if the construction sought to be put on the devise by the appellees were admissible, and the gift were thus broken up into so many separate legacies as years may chance to elapse before the death of Mrs. Matilda Waters, it could not avail to defeat the rights of the personal representatives of Andrew G. Waters. For wherever the postponement of the payment of any legacy, or of any instalment of any legacy, is referable to the circumstances of the estate, and not to circumstances personal to the legatee, the gift is vested. *O'Byrne vs. O'Byrne's Admr.*, 9 *Md. Rep.*, 512. *Snively vs. Beavans*, 1 *Md. Rep.*, 208, 222. *Spence vs. Robins*, 6 *G. & J.*, 507. 1 *Jarm. on Wills*, 756, 757. 2 *Wms. Excr.*, 1102. *Parkham vs. Gregory*, 4 *Hare*, 396. *Parker vs. Sowerby*, 21 *Eng. L. & E. Rep.*, 39.

The rule is that if the legatee be capable of taking, no postponement of the time of the payment will prevent his having a vested and transmissible interest. *Cousins vs. Shroder*, 4 *Sim.*, 23. *Thomson's Trust.*, 15 *Eng., L. & E. Rep.*, 498. *Hammond vs. Maule*, 1 *Colly*, 281.

Waters' Exctx. *vs.* Waters, Trustee, et al.

Such force is given to the rule in favor of vesting, that even where there is an express gift over—as to the children of the legatee in case he die leaving issue—such words are not allowed to make the gift itself contingent, but only to divest it in the case expressly mentioned, viz: the leaving of issue; in any other event the executor will succeed. *Parker vs. Golding*, 13 *Sim.*, 418. *Masters vs. Scales*, 13 *Beav.*, 60. *Ridgway vs. Ridgway*, 4 *Eng. L. & E. Rep.*, 108.

It is noticeable that the testator, in distinguishing amongst his children, makes the attainment of a certain age the sole criterion ; they are to fall into one class or the other according as they shall have attained twenty-one or not ; and he evidently has not at all in his contemplation, in respect of the income, the death of any of them as an event on which anything is to turn. Even where the gift in terms imports survivorship, Courts have not scrupled—the context permitting it—to construe survivors into others. But here no words of survivorship are employed, and there is no necessity for any such latitude of construction in order to give the same equitable effect to the devise. In the simple case like the present, of a gift restricted to persons who shall have reached a certain age, although the time of payment is postponed, it is always sufficient, for the vesting of the bequest, that such age had once been attained. *Clutterbuck vs. Edwards*, 2 *R. & My.*, 577. See also, *Leeming vs. Sherratt*, 2 *Hare*, 23. *Boulton vs. Beard*, 3 *De G. M. & G.*, 612. 27 *Eng. L. & E. Rep.*, 423, 424.

III. Our construction is greatly confirmed by the context.

1. Supposing the condition upon which Martha's enjoyment of her annuity of $500 depends to be fulfilled, by her ceasing to live with her mother, it cannot be doubted that

her interest in this annuity would be vested. Yet the testator blends with the clause in question, the declaration that "in dividing said surplus, the allowance of five hundred dollars per annum to my said daughter, Martha K. Waters, shall be taken and computed as a part of her portion thereof." Now, if part is vested, it reasonably follows that the whole is vested; and if Martha's share be vested, the share of the other children limited in one and the same clause must be vested. *Kidd vs. North,* 27 *Eng. L. & Eq. Rep.,* 3 *De G., M. & G.,* 954.

2. Upon what ground could it then be pretended that the several interests of the children in the income were not vested? But what essential element was wanting when Andrew died? All the children were married—all of age. The widow's allowance was not limited to any precise amount, yet the means of determining it was defined in the will. What conceivable object could there be in affecting the interests of the several children with contingency?

3. In dealing with the advances made, the testator thus makes them vested portions of the shares which the sons are to take in the final division, and indeed seems to imply that their whole shares in the *corpus* are vested, although he had previously directed that the division of the *corpus* should be made amongst the children living at the time of making it and the descendants of deceased children. Andrew's issue cannot, under the will, take that part of what would have been their father's whole distributive share, which has been already advanced and paid to him in his lifetime. Except as to any excess over his proportion of the estate, no part of these advances is ever to be returned. They have vested absolutely and forever—as well in enjoyment as in interest.

4. This kind and wise-judging parent, who sought to give these children, whom he desired should immediately

establish themselves in life, the means of so doing, never could have intended that his bounty should be snatched away from the wife whose marriage to his son he made a sufficient ground for letting him in to share in his estate, at the instant that she was made a widow, or that his son's tender and helpless orphan children, whose participation in the capital of his estate, when the division of it shall be made, he has carefully provided for, shall until then be kept destitute of all means of support.

5. As to the income there was no occasion for special limitations. The gift is simple and direct to a class of persons who are exactly defined—one of whom the complainant's intestate was. The law and the common rules of construction do the rest, and accomplish with exactness sufficient for the case the general intent which speaks out of the whole will, to provide equally for all his children and their families. That provision in the will which requires the shares of "the rest of the children" to make good any deficiency of Martha's share in the final division, tends to strengthen the view that the devise of the *corpus* gave vested interests to the children, respectively.

Finally, if the children who are over twenty-one have not vested interests in the income, then, in case of the decease of all the children before the widow—an event the possibility of which the testator himself recognized in his dispositions in regard to the capital, a complete intestacy would result as to all of the income not appropriated to the widow's own use. If all should die save one—for example, the trustee, Mr. James S. Waters—this one son would enjoy the whole residuary income of this large estate during the lifetime of the widow. A construction capable of working such consequences cannot be in accordance with the testator's intention.

*Thomas S. Alexander* for the appellees.

In support of the order of the Court below, from which this appeal is taken, the appellee, James S. Waters, will insist :

1. That the question at issue is simply whether the appellant, as executrix of a deceased child of the testator, Freeborn G. Waters, is entitled to share in the distribution of the surplus income, which is directed to be made annually during the life of the widow, amongst the "children" of the testator? Now "children," in the absence of any thing indicative of a contrary intention, includes the descendants in the first degree, and will not embrace grandchildren or others in a remote degree. *Radcliffe vs. Buckley,* 10 *Ves.,* 195. *Ld. Oxford vs. Churchill,* 3 *V. & B.,* 69. And *a fortiori* children will not include the executor of a deceased child, unless it can be shown that the child in his life time had a vested interest in the subject, which devolved as property or assets on his personal representative. The ground work of the argument on the other side must therefore be that the children of the testator in being at the time of his death acquired vested interests in the surplusses of income to accrue during the life time of the widow.

2. There is, and can be no evidence in regard to the value of the testator's estate, or of the pecuniary circumstances of the children deceased, at the times of their respective deaths. In reference to the question of interpretation, it is immaterial whether the testator's estate was or is large or small? Whether the families of deceased children are in affluent or straightened circumstances? Or whether the child deceased has left any estate or family behind him? The appellant does not claim as widow or as guardian by nurture for her children ; she claims as executrix ; and any portion of the fund which may be allotted to her will become assets for the payment of her late husband's debts. And treating the question as one of intent, it is simply

this : Did the testator, in the distribution of any portion of his estate, intend to prefer the creditors of a deceased child, to his surviving children ?

3. The question is one of pure intent. And the burden is on the appellant, like all other actors, to show that the testator intended she should share in the distribution. It is insisted that no such intent is evidenced.

1st. There is no gift independent of the direction to distribute.

2nd. The distribution is to be made by the widow, and not by the executors or trustees. They are required to pay over the entire income as it accrues to the widow ; and by such payment over, they acquit themselves of all further responsibility in respect of the fund.

3rd. The distribution is to be made of any surplus of income which may remain at the end of any year, after providing thereout, at the discretion of the widow, for her own comfortable support, and for the maintenance, support and education of the minor children.

Cases are to be found in which equity has intimated its power to enforce on the widow the duty of providing for her infant children ; yet it seems to be conceded that the latter have no vested interest in the fund which can be ascertained and separated by the Court to be administered under its direction. And it is believed no case can be found in which parties circumstanced as the adult and married children are, have been supposed to be entitled to the aid of equity, to prevent waste or injudicious expenditure of the income, or to compel the widow to render an account of the manner of her disposition thereof. She may consume the whole if she pleases to do so. The existence of a surplus at any moment is accidental.

It depends on her pleasure whether there shall be less or more. It is submitted that it cannot be safely affirmed

Waters' Exctx. *vs.* Waters, Trustee, et al.

that there is a right to participate in any surplus thus contingent, which vests at any moment prior to the period fixed for distribution thereof.

4th. The distribution is to be annually made amongst the children who may be of twenty-one years, or who may be married ; that is, amongst children who, at the moment of distribution, are in existence and clothed with the prescribed attributes. It is conceded by the appellant, that the vesting does not take place until the period appointed for the first distribution.

But the true alternative is between the vesting of the right to share in the distribution of any year's surplus, at the end of the year ; or the vesting of the same right immediately after the testator's death. And if the latter epoch is adopted then these results will follow : a child dies after the death of the testator, in its infancy and unmarried, its representative must share in the distribution, at the least from the period at which, if living, it would have attained the full age ; and next, if a child had died in the testator's life time, leaving issue, such issue would be excluded altogether from distribution. These consequences are suggested as showing that upon the hypothesis contended for by the other side, the disappointment of the testator's supposed intent will be just as probable as if the opposite hypothesis should be adopted.

5. The income is to arise from real as well as personal estate, and if the interest of the children, on any supposed surpluses, are to be deemed to be vested and capable of devolution on the proper representative of any deceased child, then the right to so much of the surplus, as was derived from real estate, would descend on the heir-at-law, whilst the right of the personal representative would be limited to so much of the surplus as was derived from personal estate. Now, it is submitted, that the discrimination could hardly

be made by the trustees ;—it could not be made by the widow who is charged with the duty of distribution. *Barham vs. Mee.*, 1 *R. & My.*, 631. *Crockett vs. Crockett*, 2 *Phill.*, 553. *Tawney vs. Ward*, 1 *Beav.*, 563. *Gibbs vs. Tart.*, 8 *Sim.*, 132.

No aid can be derived by the appellant from the subsequent clauses of the will. On the contrary, the dispositions of the principal estate are altogether contingent. The children have no power of disposition over their parts of the principal estate at any time before the period of distribution thereof. And in the event of the death of a child leaving issue, such issue is to take in the place of its parent. Is it probable, then, that the testator intended to give to his children an interest in the accidental surplusses of income in a form which would render it liable to execution, or in the hands of executors would become assets for the payment of debts?

*A. W. Machen*, for the appellant, in reply.

1. The trust to distribute is to be performed by the *trustees*, and not by the widow. This is shown by the original declaration accompanying the devise to the trustees that they are to hold the whole estate upon the trusts thereafter to be limited, of which this is one ; by the clause providing for the annuity of $500, to Martha K. Waters, which the trustees are directed to pay out of the income, which would be impossible upon the hypothesis set up by the appellee's counsel, according to which, the whole income would be in the hands of the widow ; by the structure of the clause in question itself, which exactly follows the form used in other parts of the will in defining the duties of the trustees in the several cases provided for ; by the fact that in case of the second marriage of the widow, and consequent payment of $800 a year to her, (one of the cases

covered by the clause,) the *trust* must be performed by the trustees ; by the absence of any declaration that the widow is to perform .it, the nature of the duty, and in short, the whole plan of the will and the necessity of the case.

2. The surplus or residue of income is a thing as certain in its nature or as capable of being made so, as any other subject of disposition in the will.   The testator has himself defined it, and given it both certainty and importance by expressly providing for its division and payment.

WEISEL, J., delivered the opinion of this Court.

The question in this case arises upon the will of Freeborn G. Waters, and on that clause which disposes of the surplus income of his estates, during the life of his widow, viz : whether the share of an adult child in this surplus income, continues and is transmissible after his death, during the widow's lifetime, or whether it ceases at such death.

The testator provided, by means of a trust, for the annual support of his widow during life, and also during the life of his widow, for the support of his daughter Martha and the support, maintenance and education of his minor children, out of the rents, dividends, income and profits of his estate, real and personal, which he devised to two of his sons, their heirs, &c., upon the trusts and for the uses and purposes limited in the will.   As to any surplus of said income, rents and profits that might remain after the application of the necessary portion to the support of his wife, his daughter Martha and minor children, as he had provided, he devised as follows :

"In trust that the whole of said surplus be equally divided annually amongst all my children who may be of the age of twenty-one years, or who may be married," with a further direction in regard to an annuity to his daughter Martha in a certain event, as set out in the will.

The will was made in June, 1857, and the testator died in July, 1858, leaving eight children; all over twenty-one years of age at the time of the execution of the will, except two. One of these became of age before the death of the testator, the other afterwards. Four were married when the will was made.

In the summer of 1859, one of the sons, John Summerfield Waters, died, leaving a widow and several children.

In August, 1863, Andrew G. Waters, another son, and one of the trustees and executors, died, leaving a widow and four children; the widow having been appointed his executrix by his will, and having qualified as such.

A considerable surplus income arose every year since the death of the testator, Freeborn G. Waters, for distribution. And a large surplus was in the hands of the surviving trustee for the year preceding the filing of the bill in this case in September, 1865.

These are the material allegations of the bill of complaint.

The suit is by the executrix of Andrew G. Waters, to prevent by injunction such a distribution of the surplus income in the hands of the trustee, as would exclude the estate of her husband from a participation in the fund.

It will be observed that the distribution by the will is an annual one; words of futurity are used; and the objects to take are children of the testator, of full age or married; without any words limiting a share to the representatives or descendants of any child who might die during this course of annual distribution. It is this feature that produces the difficulty in the case. On the one hand it is contended that only those of the children take every year, who are at the time of the distribution in existence and answer the description in the will; whilst on the other it is insisted, as the true construction, that

the interests in this portion of the income vested in the persons described, and were transmissible in the case of any one who might die during the lifetime of the widow.

The intention of the testator is of course the matter to be inquired into, and, as in all cases of doubt or difficulty, we must avail ourselves of settled rules of construction that are applicable and will aid in the examination.

The first and main inquiry is, whether the shares of the surplus income became vested in the children described at the time of the testator's death, or when they fell within the class indicated in the will. The subject of the bequests, it is true, is not a part of the integral estate— not the residue of an estate, after other bequests made. It is the surplus or residue of an annually accruing fund from rents and profits of the entire estate, in the hands of trustees collected by them, and held annually for distribution, after providing for the support of the widow and minor children and his daughter Martha, during the widow's life. There can be no doubt that in the case of a residue of personalty, or in the case of an annuity during the life of another, the legacy would vest and survive to the personal representative in the event of the death of the legatee before the time of payment, unless a different intention was expressed or conveyed by the will. So if the fund were directed to accumulate and to be distributed and paid at a future day or upon a certain event, and the legatee should die before that time. The rules of construction favoring the vesting of estates, and to prevent intestacy in the case of residuary bequests, would apply in those cases according to all the authorities. And the Court cannot perceive why the same rules should not govern the construction in this case. The same reasons apply ; the same motive to do equal justice to all the objects of the testator's bounty ; and no intention of the

testator to the contrary is contravened by the application of the rules. The rule for favoring the vesting of estates is laid down by Mr. Jarman in his excellent treatise on wills, in language so precise and yet so full, as clearly to embrace the bequests under consideration. It is this : " The law is said to favor the vesting of estates, the effect of which principle seems to be, that property which is the subject of any disposition, whether testamentary or otherwise, will belong to the object of the gift, immediately on the instrument taking effect, or so soon afterwards as such object comes into existence or the terms thereof will permit." As, therefore, a will takes effect at the death of the testator, it follows that any devise or bequest in favor of a person *in esse* simply, (*i. e.* without any intimation of desire to suspend or postpone its operation,) confers an immediate vested interest.

If words of futurity are introduced into the gift, the question arises, whether the expressions are inserted for the purpose of protracting the period of vesting, or point merely to the deferred possession or enjoyment. 1 *Jarm. on Wills*, 726. See also, *Gifford vs. Goldsey*, 2 *Vern.*, 35. *Eales vs. Earl of Cardigan*, 9 *Sim.*, 384. *Webb vs. Kelly, same,* 469. *Leeming vs. Sherratt*, 2 *Hare.*, 23.

This construction is in harmony with the other provisions of the will and the general intent of the testator as shown on its face. His declared purpose was that his estate, as it existed at the time of his decease should remain unimpaired during the life of his wife. This he devised in trust, directing the annual income, rents and profits from it should be first applied every year to the support of his wife and minor children, and his daughter Martha, during the life of his widow, with a provision for an equal annual distribution of the surplus among his adult or married children. The alternate provision for his daughter Martha of five hundred dollars *per annum* out of

said rents and profits, in case she ceased to live with her mother, and the direction that in the division of the surplus this allowance or annuity should be taken and computed as part of her portion of said surplus, manifest a clear intention that these bequests to the adult children should vest. She was one of that class, and the legacy of five hundred dollars *per annum* to her is clearly a vested legacy, and yet it constitutes a part of the surplus income to which she as one of the children of full age is entitled. If a part be vested, the whole is in that condition; and if one takes a vested interest out of the surplus, the others of the same class taking equal shares out of the same fund and in the same clause, take vested interests likewise. At the death of the wife the estate, real and personal, is to be equally divided among all his children then living, and the children and descendants of any deceased child, they taking the share of the deceased parent. These and all the other provisions in the will, together with his knowledge of the condition and wants of his family, the near approach to full age of his only two minor children, the marriage of four of his children, the vicissitudes of life exposing their offspring to orphanage and dependence, if not to want, lead to the conclusion that the testator did not intend that these bequests of the surplus income should be contingent, and dependent, as to any of the described legatees, upon his continuance in being during the life of the widow.

We are therefore of opinion that the children of Freeborn G. Waters, who were twenty-one years of age or married at the time of his death, took vested interests in their shares of the surplus income from his estates from that time; and that the shares of those who attained twenty-one years or married after his death, became vested at the happening of either of those events; and that the share of

Andrew G. Waters who has died, survives to his personal representatives.

The order of the Court below refusing the injunction prayed for will be reversed, and the cause and original papers remanded with instructions to the Circuit Court of Baltimore City to grant an injunction in conformity with this opinion and decision.

*Order reversed and cause remanded.*

(Decided January 27th, 1866.)