WALKER *v.* SAFE DEPOSIT & TRUST COMPANY OF BALTIMORE ET AL.

[No. 129, October Term, 1948.]

696

*Decided April 1, 1949.*

The cause was argued before DELAPLAINE, COLLINS, GRASON, and HENDERSON, JJ.

*Joseph L. Carter* for the appellant.

*George M. White,* with whom were *White & Page* on the brief, for the appellee, Safe Deposit & Trust Co.

*Ward B. Coe, Jr.,* with whom were *Carman, Anderson & Barnes* on the brief, for the other appellees.

HENDERSON, J., delivered the opinion of the Court.

This case arises upon a bill of complaint of the Safe Deposit and Trust Company, trustee under a deed of trust from Noah Walker, to have the instrument construed for the purpose of determining to whom should be paid the

share of the income heretofore paid to Chauncey W. Shelton, deceased.

The deed of trust, executed on January 4, 1893, conveyed to the trustee the settlor's interest in his grandfather's estate. It provided (in paragraph 3), subject to certain discretionary powers in the trustee as to payments to or for the benefit of the settlor, that the income should be paid "to my brothers and sister, equally, during my life, and while I remain unmarried, and to the survivors or survivor of them, if any of them die during my life and while I remain unmarried, not leaving issue him or her surviving, but in case any of them, my said brothers and sister, die during my life, and while I remain unmarried, leaving issue, him or her surviving, such issue shall stand in the place of the parent of such issue in the distribution of said income, and receive the share of such parent."

In the event that the settlor should marry, there were elaborate provisions as to the disposition of the income in favor of his wife and children. However, the settlor's wife predeceased him, and he left no issue. In this contingency it was provided (in paragraph 6) that the estate should be held "in trust for my brothers and sister, and the then surviving issue of a deceased brother or sister, on the same trusts, and for the same estate, and upon the same terms and conditions as to the distribution and conveyance thereof to the persons entitled, as are declared and provided with reference to the estate herinbefore provided to be held for my brothers and sister in the event of my death without having married."

In the event of his death without having married, it was provided (in paragraph 3) that the trustee should "continue to pay the income of said estate to my brothers and sister, equally, and to the survivors or survivor of them, if any of them die without issue, but if any of them die leaving issue him or her surviving, then in the distribution and payment of said income, such issue shall stand in the place of the parent, and receive the share of said income which the parent of such issue would have

taken hereunder if living, and in trust to continue to so distribute and pay said income after my death, not having married, until the death of the longest liver of said persons, my said brothers and sister, and thereafter until the youngest child of my brothers and sister, who shall survive the longest liver of them, shall attain the age of twenty-one years, at which time said Trustee shall divide said estate equally among the children of my brothers and sister then living, *per capita*, the descendants then living of a deceased child to take the share to which the parent of such descendants would be entitled if then living, and shall convey, transfer and deliver to the children and descendants of children of each of my brothers and sister, in fee-simple, absolutely and discharged of the trusts of this deed, the share of said estate to which each of said children and descendants of deceased children is entitled hereunder, * * *." In paragraph 7, spendthrift trust provisions were made applicable to any and all beneficiaries under the instrument.

At the time of the execution of this deed, the settlor's parents were both dead. He had three brothers living, Dixon Walker, Hamilton C. Walker and Henry M. Walker, and one sister, Sadie C. Councilman, whose first husband was named Shelton. She died May 1, 1906, leaving as her only surviving descendant a son, Chauncey W. Shelton. Dixon Walker died May 17, 1920, without issue.

The settlor died August 7, 1920, and after his death the trustee paid the net income in equal shares to Hamilton C. Walker, Henry M. Walker and Chauncey W. Shelton. Hamilton C. Walker died December 26, 1928, without issue surviving. Thereafter, the trustee paid the net income equally to Henry M. Walker and Chauncey W. Shelton, until the death of the latter on January 14, 1946. Letters were granted to J. Ronald Walker (a son of Henry M. Walker), administrator *c. t. a.*, by the Orphans' Court of Baltimore City. By his will dated December 30, 1910, Chauncey W. Shelton devised and bequeathed his entire estate to his uncle, Hamilton C. Walker, if living at the time of his death, without any

gift over in the event which happened. Chauncey W. Shelton was survived by his wife, Edythe, who died testate, on April 13, 1947, after the filing of this bill of complaint, a resident of the State of Washington. Her executor, George J. Hodge, was made a party to this proceeding. The nearest surviving relatives of Chauncey W. Shelton are his uncle, Henry M. Walker, and Mary S. Sweeney, a sister of his father, both of whom are parties.

Upon the death of Chauncey W. Shelton, Henry M. Walker claimed the income from the estate by survivorship. Upon the filing of the bill, S. Ronald Walker, administrator *c. t. a.*, submitted his rights to the determination of the court.

The first question presented is whether, under a proper construction of the deed of trust, the right of Chauncey W. Shelton to share in the income of the trust was a life interest, terminating with his death, or an absolute interest passing to his personal representative until the termination of the trust, an event which has not yet occurred, since one of the settlor's brothers is still alive. The chancellor filed no opinion, but in his decree, directed the trustee to pay the income, accounting from January 14, 1946, the date of Chauncey's death, until the termination of the trust, one-half to Henry M. Walker, and one-half to J. Ronald Walker, administrator *c. t. a.*, with the provision that upon the stating of an administration account in the Orphans' Court, the distributees of the estate of Chauncey W. Shelton might apply for modification of the decree, to the end that income payments might be made directly to them. The decree did not undertake to determine who these distributees were.

The appellant contends that upon the death of Chauncey W. Shelton in 1946, his share of the income passed to Henry M. Walker by survivorship; and thereafter the entire net income became payable to Henry as the ultimate survivor of the brothers and sister of the settlor and the issue of the deceased brothers and sister. The appellees contend that Chauncey took a vested interest

in his parents' share of the income, during the continuance of the trust, which was not divested by his death without issue.

The difficulty faced by the appellant, in urging this construction, is that the language of paragraph 3 only calls for survivorship as between "my brothers and sister * * * if any of them die without issue." In the event that "any of them die leaving issue him or her surviving," it is provided that "in the distribution and payment of said income, such issue shall stand in the place of the parent, and receive the share of said income which the parent of such issue would have taken if living." The instrument makes no provision for a gift over to the surviving brothers or sister, in the contingency that has occurred, the subsequent failure of substitute issue.

In the recent case of *Ryan v. Herbert,* 186 Md. 453, 47 A. 2d 360, 361, a testator provided for the payment of income to his children, with survivorship between them in case of death without issue, "and in the case of the death of any one of my said children during the continuance of said trust leaving issue him or her surviving, the income of the share of the one so dying shall go to and become the property of his or her child, if only one, or children, if more than one, equally, share and share alike." We held that, in the context, the last reference to "children" would include grandchildren. Discussing the question as to "what estate in or title to the income passes to the descendants of a dying child leaving issue," Chief Judge Marbury, speaking for the court, said: "The appellant contends that such income continues its descent from time to time under the testator's will, so that if the father of the two children * * * should die, his share would then go to them during the continuance of the trust. But the difficulty with this construction is that not only does the testator say that the income of the child dying shall 'go to and become the property of his descendants, but he makes no provision whatever for any further devolution. The gift is absolute, although the words 'during the continuance of the trust' must be assumed, be-

cause it is only during the continuance of the trust that the income is payable." Despite the fact that other provisions were made for distribution at the termination of the trust, it was held that "if the father of the two minors * * * should assign his income or should die willing it to someone else, his assignee or legatee would be entitled to take such income during the continuance of the trust." See also *Waters v. Waters*, 24 Md. 430; *Meyer v. Eisler*, 29 Md. 28; *Tayloe v. Mosher*, 29 Md. 443; *Miller, Construction of Wills*, § 231.

We may assume that the presence of spendthrift trust provisions in the case at bar would have prevented alienation during Chauncey's lifetime, but we think the reasoning of the *Ryan* case supports the conclusion that a gift over to the surviving brother cannot be implied, and that Chauncey took a devisable or descendable interest in the income which was not contingent upon his survival until the termination of the trust. The appellant contends that it was the intention of the settlor to substitute the issue of the deceased sister as a class, and that if Chauncey had left issue, such issue would be entitled to the income. But upon this theory it would seem that the interest of Chauncey would vest upon the death of his mother, subject to divestiture upon his death with issue, which did not occur. Compare *Reese v. Reese*, [*Chism v. Reese*], 190 Md. 311, 58 A. 2d 643; *Bishop v. Horney*, 177 Md. 353, 9 A. 2d 597; *Lee v. Waltjen*, 141 Md. 450, 458, 118 A. 246. These cases apply the rule of early vesting. Similarly, where takers can be ascertained before the happening of the contingency, the rule that a contingent remainder is devisable or descendable may apply. *Boynton v. Barton*, 192 Md. 582, 64 A. 2d 750; *Hammond v. Piper*, 185 Md. 314, 44 A. 2d 756. Even assuming that Chauncey became entitled to income as a member of a class, there still remains the fatal objection that there was no gift over upon his death without issue.

The appellant relies upon the case of *Kemp v. Bradford*, 61 Md. 330. In that case a settlor created a trust for his wife for life, with remainder to his children or

the survivors of them living at the life tenant's death, and to the issue of deceased children, such issue to take the share to which their parent would be entitled if living, "to be then conveyed * * * to the said children and descendants". A child, Greenbury, died before the life tenant, intestate, leaving a child Mary Ann, who conveyed away her interest and died before the life tenant, leaving children who survived the life tenant. The alienee was held entitled to her interest, against the claim of her children. It is not clear from the opinion whether the holding was based upon a finding that Greenbury took a vested remainder, defeasible only in the event of his death without issue, which passed to Mary Ann upon his death intestate, or whether Mary Ann, in substitution for her father, took a vested remainder to the exclusion of her children. In either event, the taker was fixed before the death of the life tenant, and the court did not imply a gift over to the children and descendants who survived the life tenant.

The appellant contends, however, as an alternative construction, that even if Chauncey took a transmissible interest in the income upon the death of his mother, the quantum of that interest became fixed as of that date, at one-fourth of the income, and should not have been augmented, upon the subsequent deaths of Dixon and Hamilton without issue. In other words, he contends that the subsequent accretions should have been paid to the surviving brothers or brother, and not to the nephew, and that Chauncey had a transmissible interest in one-fourth, rather than one-half of the income, citing *Turner v. Withers,* 23 Md. 18; *Anderson v. Brown,* 84 Md. 261, 35 A. 937; *Wilson v. Bull,* 97 Md. 128, 54 A. 629; *Bradford v. Mackenzie,* 131 Md. 330, 101 A. 774; *Sabit v. Safe Deposit & Trust Co.,* 184 Md. 24, 40 A. 2d 231; *Marbury v. Bouse,* 187 Md. 106, 48 A. 2d 582, 166 A. L. R. 1272; and *Ridgely v. Pfingstag,* 188 Md. 209, 50 A. 2d 578. The appellees contend that these cases are distinguishable, that the appellant has acquiesced in payments by the trustee upon the opposite theory since 1920, and that in any

event the contention was not made in the court below and cannot be considered here.

Rule 9 of this court, relating to appeals generally, provides: "In no case shall the Court of Appeals decide any point or question which does not plainly appear by the record to have been tried and decided by the Court below." The record does not show that the point was made below, or considered by the chancellor, but nevertheless the decree did fix the quantum of Chauncey's interest, under a bill by the trustee asking construction of the instrument, and the answer of his administrator *c. t. a.* submitting his rights to determination. Since the point was argued here on appeal, it cannot be treated as waived. We think it is before us. We also think that the appellant is not estopped by past acquiescence, from raising a question as to future payments of income, whatever may be the situation as to past payments, as to which we express no opinion.

Assuming that Chauncey took a transmissible interest in one-fourth of the income upon the death of his mother, the question is whether he became entitled to an augmented share after the death of Dixon, or whether Dixon's share should have been divided between Hamilton and Henry, as the survivors of Dixon. A similar question is presented whether, after the death of Hamilton, his share should have been paid to Henry and Chauncey, or to Henry alone as the survivor of Hamilton. In either event, there would seem to be a further question whether the portion of Dixon's share, passing to Hamilton, vested in him, or would pass to Henry and Chauncey, or to Henry alone. In other words, there is a further question whether the accrued share resurvived. *Cf. Marbury v. Bouse, supra.* This point was not considered by the Chancellor, nor was it presented in the briefs or argument.

It does not appear from the record that the personal representative of Hamilton was made a party to the proceeding, yet, as suggested above, it is conceivable that he may have been entitled in his lifetime, to a larger share of income than he received after the death of Dixon,

and that, at least as to the portion of Dixon's share, he had a transmissible interest in that portion of income at his death. We think it is inappropriate to decide either of these questions until the proper parties are before us. Accordingly, we shall remand the case, without affirmance or reversal, to the end that personal representative of Hamilton may be made a party, and the questions suggested may be passed on by the Chancellor. Code, Art. 5, § 42; *Takacs v. Doerfler*, 187 Md. 62, 48 A. 2d 328. While we hold that Chauncey took a transmissible interest in the income upon the death of his mother, we reserve decision upon the quantum of his interest at the time of his death, and the quantum of the interest of Henry, pending further proceedings.

*Remanded, with costs to be paid out of the fund.*