MARGUERITE S. HANS *v.* SAFE DEPOSIT & TRUST COMPANY

[No. 40, January Term, 1940.]

54

*Decided April 4th, 1940.*

The cause was argued before BOND, C. J., OFFUTT, PARKE, SLOAN, MITCHELL, JOHNSON, and DELAPLAINE, JJ.

*R. Contee Rose* and *Walter H. Buck,* for the appellant.

*Charles McH. Howard,* for the appellee.

PARKE, J., delivered the opinion of the Court.

On the assigned grounds of duress in its making, and of the inalienability and the non-transmissibility of its subject matter, a suit was begun by Marguerite S. Hans

to have annulled a deed of trust which was made on May 13th, 1916, by her and her then husband to the Safe Deposit and Trust Company of Baltimore as trustee. The appeal is from the decree of the chancellor sustaining the deed of trust and dismissing the bill of complaint.

The testimony has been carefully considered and weighed in connection with the circumstances attendant upon the execution of the deed of trust, with the inferences to be drawn from the relation of the parties, and with the nature of the provisions of the deed of trust, and the court is of the opinion that duress is not established. On the second ground taken, the following pertinent facts should be stated.

A certain Henry S. Shryock died testate on December 6th, 1882. His large residuary estate of realty and personalty was devised and bequeathed to the Safe Deposit and Trust Company of Baltimore, trustee, for the use and benefit of his widow and sister and his children, and their issue, during the lives of the said widow and sister, and the life of the survivor of them, and from and after the death of the said widow and the last surviving child the whole of the rest and residue of said trust estate to be divided equally among all of the testator's grandchildren then living, together with the lawful issue of any dead grandchild, the grandchildren living to take *per capita* and the issue of any grandchild to take *per stirpes*.

The trustee appointed by the will accepted the trust and continued its administration until the death, on December 14th, 1927, of the last survivor of the testator's widow and children. Before the happening of this death, Marguerite S. Hans, a grandchild of the testator, and her then husband, Evan D. Hans, executed, on May 13th, 1916, a deed of trust to the Safe Deposit and Trust Company as trustee. The recital of the deed set forth the terms of the residuary clause of the will and codicil of her grandfather, which created the trust, and declared that "the said Marguerite S. Hans is desirous of settling all of her property interest and estate to which

she is now or may hereafter become entitled in the manner as in said will and codicil set forth and the said Evan D. Hans her husband is desirous of joining in these presents to more fully and perfectly carry out such settlement as aforesaid and the Safe Deposit and Trust Company in Baltimore party of the second part at the request of the parties of the first part" (the grantors) "and for the consideration hereinafter expressed has agreed to be trustee under this deed and settlement."

After stating that the deed is "in consideration of the premises and the sum of one dollar in hand paid and other good and valuable considerations the parties of the first part thereto moving," the grant and assignment proceeds in these words:

"The said parties of the first part, Marguerite S. Hans and Evan D. Hans, her husband, do hereby bargain, sell, assign and convey unto the said Safe Deposit and Trust Company of Baltimore its successors and assigns all and every property right title interest, estate claim and demand of them the said parties of the first part or either of them in unto or out of the same and every part thereof to which she the said Marguerite S. Hans is or may be entitled to any claim or demand under the provisions of said last will and testament and codicil thereto.

"To have and to hold all said property and premises hereby intended to be granted and assigned and conveyed or expressed so to be unto the Safe Deposit and Trust Company of Baltimore its successors and assigns according to the nature and quality of the said property and premises upon the trusts and with and subject to the purposes, authorities and provisions hereinafter expressed and declared."

The trusts declared are, in summary, for the sole and separate use and benefit of Marguerite S. Hans for life and then to convey, assign and pay over the trust estate unto such person or persons as she shall by last will appoint; and, in default of such appointment or as far as the appointment shall not extend, in trust for all of the children, if any, of the said Marguerite, their heirs,

executors, administrators and assigns, in equal shares, the child, children or descendants of any deceased child of the said Marguerite to take the share to which its parent if living would have been entitled, and if there be only one child to his or her executors, his or her executors, administrators and assigns. If there shall be no child, children or descendants of the said Marguerite, then, so much of the said trust estate as shall be realty shall go to and devolve upon and become the property of the person or persons who would take under the laws of the State of Maryland in relation to the descent of real estate on the death of the said Marguerite as if she had died seized and possessed thereof intestate and without her having married; and so much of said trust estate as shall be personal property shall go to and become the property of the person or persons who, under the Statute of Maryland for distribution of personal estate of intestates, would, on the death of the said Marguerite intestate, become entitled thereto, if she had died possessed of the estate without having been married.

Ample powers were conferred upon the trustee for the administration of the trust, subject to the provision that the power of sale and conveyance of any real estate or chattel real of the trust shall not be exercised without the prior consent in writing of the said Marguerite. The duty was particularly imposed upon the trustee to require it to enforce the transfer and delivery to it for the purposes of the trust of all the real and personal property to which the said Marguerite "shall or may become entitled upon the happening of the event mentioned in the said last will and testament of her grandfather Henry S. Shryock or otherwise howsoever and hereby granted, conveyed or assigned or intended so to be when and so soon as said events shall occur."

In further confirmation of the clear and unmistakable intention of the grantors to grant, transfer and assign every estate interest or right, whether vested, contingent, present or future, of Marguerite S. Hans under the will of her grandfather, the grant concludes with this stipu-

lation: "And the said Marguerite S. Hans and Evan D. Hans, her husband, do hereby covenant and agree with the trustee of these presents that they will execute any deed, deeds or other instruments of writing which may be required to more fully vest in and assure to the trustee under these presents all such estates and properties in which the said Marguerite S. Hans now has a reversionary interest and which are intended to be conveyed and assigned by these presents for when and as soon as she shall become entitled to the same under the terms of the last will and testament and codicil of Henry Shryock aforesaid."

This deed of trust was duly delivered and recorded, but it was not until the death of the last surviving life tenant on December 14th, 1927, that the duties of the trustee became active. On December 31st, 1927, the Safe Deposit and Trust Company in its several capacities as trustee under the will of Henry S. Shryock, deceased, and as trustee under the deed of trust of the said Marguerite S. Hans (sometimes called Catherine Marguerite Hans) and husband, and as trustee of other beneficiaries under similar but distinct deeds of trust, instituted equity proceedings against the beneficiaries and other parties claiming under them. Among the defendants were the said Marguerite S. Hans and Evan Donovan Hans, her husband.

At the death, on December 14th, 1927, of the last survivor of the widow and children of the testator, there were nineteen grandchildren then living, and no dead grandchild leaving issue, so there were nineteen equal shares to be divided and distributed. The plaintiff, Marguerite S. Hans, or her grantee under the deed of trust, was entitled to one of these shares. The bill of complaint set out facts which show that the distribution of the trust estate among the parties had become so complicated by the acts of the beneficiaries with reference to their several shares of the trust estate, that the trustee desired the aid and assistance of a court of equity in making the final distribution and division.

The bill of complaint concluded with the prayer for general relief and for the particular relief that the court assume jurisdiction of the trust and determine and decree whether distribution of the trust property should be made among the parties entitled, and who are the parties now entitled to receive the same, and in what proportions; and that such division and distribution may be made under the supervision and direction of the court, and, secondly, that such part of the securities and ground rents as cannot be divided in kind without loss and injury to the parties interested may be sold in order that the proceeds thereof may be divided and distributed. The trust created by the testator's will contemplated this division and distribution of his estate by the trustee, whose office and function did not end until this division and distribution was effected. In the accomplishment of this final duty as trustee under the will of Henry S. Shryock, the trustee had the right to seek and obtain the jurisdiction, direction and supervision of a court of equity.

On May 2nd, 1928, the chancellor passed the decree in this cause, which determined that the nineteen equal shares or parts into which the trust estate had been divided by the trustee should be ratified and confirmed as in accordance with the nineteen separate schedules of division filed; and that, *inter alia*, the share designated "Share M" should be allotted to the "Safe Deposit and Trust Company of Baltimore, Trustee, under the deed from Catherine Marguerite Hans (Marguerite S. Hans) mentioned in these proceedings," and that the trustee be vested with the full legal title to the parcels of real estate included in the share allotted to the trustee, as the grantee and assignee in trust of the said Marguerite S. Hans, and that the trustee under the will execute such transfers of title to the allottee and distributee as may be necessary or proper. The share embraced both real and personal property of the value of $63,248.53.

As has been stated, Marguerite S. Hans and her husband, Evan D. Hans, were parties to the cause in which this decree was entered, and their deed of trust was be-

fore the court for its consideration in relation to the determination of who was entitled to receive the share of Marguerite S. Hans as one of the nineteen grandchildren of the testator. She was represented by counsel, who was her husband, and in her and his name he united in a written assent to the passage of the decree. In accordance with this decree, the then vested share of Marguerite S. Hans was transferred and assigned to the Safe Deposit and Trust Company as trustee upon the trusts declared by the deed of trust of the said Marguerite S. Hans and her then husband. The trustee, from 1928, administered the trust in accordance with this deed of trust, and the said Marguerite S. Hans as its beneficiary for life received the income therefrom and the full benefits of its provisions. It further appears that in January, 1930, the beneficiary and her husband requested that the trustee purchase of them as an investment for the trust fund an improved parcel of land in Baltimore City where the beneficiary and her husband lived. The trustee complied with this request, and the property was then conveyed by the beneficiary and her husband to the trustee upon the trusts set forth in their deed of trust. The property was later sold and conveyed, with the concurrence of Marguerite S. Hans as provided in the deed of trust, and the proceeds form a part of the corpus of the trust.

It was not until November 12th, 1938, that she filed her bill of complaint to have the deed of trust annulled on the ground that, at the time of its execution, the interest which she attempted to convey was a mere expectancy which was incapable of being transferred by assignment or alienation. After the taking of all the testimony the bill of complaint was amended by permission of the court, so that it was charged that the deed of trust had been procured by the duress of the father of Marguerite S. Hans, who, at the time of the filing of this amendment, was divorced from her first husband, and had married again. Her present name is Marguerite S. Roche and it is in that name that the appeal is taken.

For greater convenience her first married name is used in this opinion.

The plaintiff has as her only issue three adult children by her first husband, who are Evan Donovan Hans, Jr., and Marguerite Hans Dell, and Marion Howard Hans, who have been made parties. These children have no issue, and submit their rights to the protection of the court.

The facts of this record do not sustain the contention of the plaintiff that, notwithstanding the trustee had the complete care and custody of her property in its hands and had administered the trust for her use and benefit, she never recognized the validity of the deed of trust, and had, from time to time, notified the trustee to this effect. At the time of the execution of the deed of trust the grantor was twenty-seven years of age, intelligent, well educated, and married. Her husband united in the deed. He is a lawyer and had then been a member of the Bar of Baltimore City for nine years. Before she signed the deed, she had discussed the matter with her husband, her father, and the latter's solicitor. She knew and fully understood the nature and purpose of her act. So the primary question is whether the future interest of the plaintiff in the trust estate under her grandfather's will was of such a nature as not to be alienable and transmissible by her voluntary deed of trust, which was made before the precedent particular equitable estates for life under the trusts created by her grandfather's will had terminated, and the property thereby held in trust had become distributable and transferable in possession to the plaintiff as one of the ultimate beneficiaries of the trust.

By the terms of the trust created by the will of Henry S. Shryock, the residue of his real and personal property was to be held by the trustee for the use and benefit, during their lives, of the *cestuis que trust* and the life of the survivor, and then in further trust that "the whole of this rest and residue estate to be divided equally among all my grandchildren then living together with

the lawful issue of any deceased grandchild, the said grandchildren taking *per capita* and the issue of any deceased grandchild taking *per stirpes.*" The future executory estate thus created was contingent on the existence of grandchildren or their lawful issue. *Barnum v. Barnum,* 42 Md. 251, 312; *Lee v. Waltjen,* 141 Md. 458, 460, 119 A. 249.

The law, however, favors the vesting of estates, and, therefore, in the absence of any clear provision of the will to the contrary, the time of the vesting of the equitable future estate or interest is the death of the testator. So, the executory future equitable interest would immediately vest at the death of the testator in every grandchild, *per capita,* and the issue of any dead grandchild, *per stirpes,* if such grandchild and issue of any dead grandchild be alive at the death of the testator, and every other grandchild as he came into being, subject to being proportionately divested in their shares as the number of grandchildren is increased by future births during the existence of the precedent equitable life estates. *Miller on Construction of Wills,* sec. 219, pp. 605-607; *Tiffany on Real Property* (2nd Ed.), sec. 139; *Barnum v. Barnum,* 42 Md. 251, 312; *Lee v. Waltjen,* 141 Md. 458, 460, 119 A. 249; *Cox v. Handy,* 78 Md. 108, 122, 27 A. 227, 501; *Dawson v. Akers,* 127 Md. 585, 590, 96 A. 806.

As the future executory estate or interest under the will of the testator was so limited as to take effect in possession immediately upon the determination of the precedent particular life estates, which were to determine by the death of the last surviving beneficiary for life, whose death was an event which must unavoidably happen in time, the future executory estate or share of a grandchild is vested in interest as soon as that grandchild is *in esse* and thus ascertained, and nothing but his own death before the determination of the precedent particular life estates will prevent such future equitable interest or share from vesting in possession. Hence, at the time of the execution of the deed of trust, the grantor,

Marguerite S. Hans, had a present fixed right of future enjoyment in an equitable future interest under her grandfather's will, which nothing but her own death during the precedent life estates would prevent from vesting in possession. The uncertainty of the time of enjoyment and of the size of the share, which latter depended upon the number of living grandchildren, and the issue of any dead grandchild, who would be alive at the time of distribution, does not prevent the interest of the grandchild from being vested upon her coming into being. *Miller on Construction of Wills*, sec. 230, pp. 641, 642; *Roberts v. Roberts*, 102 Md. 131, 146, 147, 62 A. 161.

Nor does the fact that the interest of the grandchild in being is defeasible or determinable by death of the grandchild before the determination of the precedent particular life estates prevent the interest of the grandchild from being vested. It merely makes the share vested in a defeasible or determinable interest, instead of in an absolute one. *Tayloe v. Mosher*, 29 Md. 443, 455; *Roberts v. Roberts*, 102 Md. 131, 149, 62 A. 161; *Lee v. Waltjen*, 141 Md. 450, 453, 119 A. 246; *Cole v. Safe Deposit & Trust Co.*, 143 Md. 90, 95, 121 A. 911; *Kemp v. Bradford*, 61 Md. 330, 334-336.

The condition of the grandchild being alive to take at the determination of the precedent life estates is here a condition subsequent, and an executory future interest was vested in the grantor when she made the deed of trust, and so was transmissible to the trustee by the terms of her deed of trust. See, generally, article *Alienability and Transmissibility of Future Interests in Maryland* by Prof. Russell R. Reno, in 2 Maryland Law Review, pp. 89, 93-114, and *Reilly v. MacKenzie*, 151 Md. 216, 134 A. 502, 48 A. L. R. 778; *Brian v. Tylor*, 129 Md. 145, 98 A. 532.

The case of *Schapiro v. Howard*, 113 Md. 360, 78 A. 58, is not in conflict with the position here taken, as the testator in that case had specifically declared his intention that the class to take should not be opened at the time of his death, but at the time of the interest vesting

in possession. Thus the testator clearly imposed the condition precedent that the members of the class should be those who survived at the death of the life tenant, which was the time of the vesting of the remainder in possession. So, the grantor who had executed, during the period of the precedent estate for life, the voluntary deed in that case, purporting to convey his future interest as a member of the class to take under an alternative limitation in contingent remainder, was held to have only a possibility of taking a share, and, so, the deed did not pass any interest. The appeal in *Re Banks' Will*, 87 Md. 425, 428, 40 A. 268, is another case where the specific provisions of the testator's will establish the testator's intention that the future interest contemplated was only to take effect in interest provided the beneficiary be living at the time the future interest was to vest in possession and, accordingly, the court held that the will created a condition precedent of survival, and the future interest was inalienable prior to its vesting in possession.

Not only did the plaintiff have an alienable and transmissible interest in the trust estate of her grandfather at the time she and her husband executed the deed of trust here in question, subject to be divested by her death before the termination of the precedent equitable life estates, but the plaintiff was bound by the decree passed on May 2nd, 1928, in the equity cause wherein she and all the persons in interest and concerned were parties. At the time of the institution of the equity suit, the future estates or interests of the grandchildren were vested in possession. As has been seen, the equity proceedings were begun for the purpose of having the court assume jurisdiction over the administration of the trust and the division of the trust estate into shares as directed by the testator's will, and determine who are entitled to receive the shares to be allotted. These purposes were within the jurisdiction of equity, and the rights of the parties were before the court for adjudication, and the deed of trust by the plaintiff was a part of the record, and its operation and effect a subject of consideration and deter-

mination. Thus the ratification and confirmation in that cause of the division of the trust estate into ninteen shares or portions, and the apportionment and allotment of a specific one of said shares, to which the said granddaughter Marguerite S. Hans would have been entitled if she had not executed said deed of trust, to the Safe Deposit and Trust Company of Baltimore, trustee under said deed of trust, is a final and conclusive adjudication that the interest and estate of said Marguerite S. Hans in the property embraced in the trust created by her grandfather, Henry S. Shryock, were granted and assigned to the said Safe Deposit and Trust Company of Baltimore, trustee, to be by it, and its successors in the trust, held for the purposes and uses created and declared in the deed of trust of the said Marguerite S. Hans and her husband to the Safe Deposit and Trust Company of Baltimore, trustee.

The doctrine of *res judicata* applies. The plaintiff cannot now raise an issue which was directly involved and decided in the suit mentioned, and is now finally concluded. 2 *Freeman on Judgments* (5th Ed.), sec 883, p. 1865; *Miller's Equity Proceedure,* sec. 264, p. 330; *Eureka Life Ins. Co. v. Geis,* 121 Md. 196, 88 A. 158; *Girdwood v. Safe Deposit & Trust Co.,* 143 Md. 245, 257, 122 A. 132; *Myers v. Gordon,* 165 Md. 534, 538, 539, 170 A. 186; *Moodhe v. Schenker,* 176 Md. 259, 4 A. 2nd 453, 458; *State v. Brown,* 64 Md. 199, 203, 204, 1 A. 54, 6 A. 172; *Beall v. Pearre,* 12 Md. 550, 568; *Barrick v. Horner,* 78 Md. 253, 258, 27 A. 1111.

The other grounds urged in support of the decree of the chancellor dismissing the plaintiff's bill of complaint need not be considered, as the reasons here assigned require an affirmance of his decree.

*Decree affirmed, and costs to be paid by the appellant.*